EMPIRE CONSTRUCTION CO. *v.* CITY OF CINCINNATI ET AL.

(Decided April 2, 1929.)

*Messrs. Peck, Shaffer & Williams,* for appellant.

*Mr. John D. Ellis*, city solicitor, and *Mr. Milton H. Schmidt*, for appellees.

Ross, J. This case constitutes an appeal from the court of common pleas of Hamilton county, Ohio. Plaintiff sues to enjoin the collection of an occupational tax assessed by the city of Cincinnati.

Plaintiff was engaged, under a contract with the Baltimore & Ohio Railroad Company, to dig a new channel for Millcreek. This was the principal employment and occupation of the plaintiff company, as far as the facts in this case are concerned. A number of minor activities became incidentally necessary to such major project; among these were the erection of a small shed for an office, the digging and laying of a connecting sewer to the new channel, the building of temporary and permanent railroad bridges, the erection of a 900-foot concrete retaining wall, which took 150 men approximately nine months to construct, and the driving of a large amount of piling.

It is claimed that these several minor activities did not constitute "occupations" under the city ordinances. The appropriate sections of the ordinances are as follows:

"Sec. 812-2. If a person, association of persons, firm or corporation be engaged in carrying on in the City of Cincinnati more than one of said trades, professions, occupations and businesses, such person, association of persons, firm or corporation shall pay the occupation tax herein levied for as many of said trades, professions, occupations and businesses as are so carried on; provided, that if any person, association of persons, firm or corporation engage

in or carry on any of said trades, occupations or businesses at more than one location in said City, a tax in the amount herein specified shall be levied against such person, association of persons, firm or corporation for each such location."

"Sec. 812-11. The word 'occupation' as used in this ordinance, shall include any and all trades, professions, or businesses, pursued, carried on or engaged in, in the City of Cincinnati."

"Schedule 1. Subdivision 1. Every person, association of persons, firm or corporation, engaged in the following businesses, or occupations, except as otherwise herein specified, tanneries, abattoirs, packing houses, slaughter houses, bakeries of all descriptions, monument manufacturers, proprietary medicine manufactories, printing, lithographing and bookbinding establishments, publishers of newspapers, magazines and other periodicals, published for profit, gold and silver refiners, enamelers, horticulturers, landscape gardeners, tree surgeons, and nurseries, rock quarries, auto factories, engravers, japanners, assemblers, cloth spongers, diamond setters, fertilizing works, tanking or rendering houses, mills of all kinds, manufactories of models and patterns, contractors for furnishing work, labor, and material on any work such as building of streets, sewers, laying of conduits, subways, elevated roads, bridges, culverts, boulevards, lanes, byways, and alleys, whether for public or private work, and not specifically provided for under those contractors pertaining to contractors of buildings, houses, or dwellings, and manufacturers of every kind, character and description shall pay an annual tax as follows:

"Class 1. No employe, eight ($8) dollars per annum.

"Class 2. One or more employes, two ($2) dollars for each employe in addition to the taxes levied in Class 1 of this subdivision."

"Schedule 2. Subdivision 2.

"Builders and Contractors (General and Repair).

"Every person, association of persons, firm or corporation engaged in the business of building or erecting structures, buildings, houses or dwellings, or in altering, repairing, wrecking, or improving any structure, building, house, or dwelling, as general, head or subcontractor, and being paid either by the contract or on the cost plus plan or on time and material plan or by the day or hour and not being a regular employe of a Building Contractor paying the tax as provided for in this ordinance shall pay an annual tax as follows:

"Class 1. No employe, twelve ($12) dollars per annum.

"Class 2. One or more employes, two ($2) dollars per annum for each employe in addition to the tax levied in Class 1 of this paragraph.

"This paragraph shall include all metal lath and metal dome; marble tile and mosaic; plasterers and lathers; masonry including all kinds of stone, brick, tile, terra cotta, the setting of same, also concrete footings and foundations; fabricators; steel contractors and erectors; floor surfacing contractors; wreckers; shorers; raisers, riggers, and splicers; cement and reinforced contractors; asbestos, sprinkling system, conveyor installers; heating; air, steam, hot water; painters; decorators; glaziers, art glass contractors; carpenters; plumbers; stair builders;

excavators; and all other branches not herein specifically named."

We find no clause or provision of the ordinances directly applicable to the digging of the new channel, the main project, nor to the driving of the piling; nor do we think the ordinances applicable to the erection of the small shed, to be used as offices, nor to the construction of the temporary railroad bridge, which was to be removed as soon as its purpose was served.

However, the ordinance clearly covers the laying of sewers, and both the permanent railroad bridge and the retaining wall were "structures" easily within the evident intention of the ordinance, and the "occupations" involving same were consequently taxable.

We do not resort to implication to reach this conclusion. The language used is explicit, and, strictly construed, naturally involves the occupations mentioned. The language of the ordinance is clear and unequivocal.

It is contended that the company was engaged in "excavating for railroad construction only," and that the subsidiary activities were included in the general operation. We find no fault with this conclusion, but this does not preclude the not less evident proposition that such subsidiary activities were nevertheless "occupations" specifically provided for in the ordinance. Their correlation to and affiliation with the main activity in no way change their character as occupations, nor insulate them from the effect of the ordinance, and as such they are taxable.

It might be necessary for a company engaged in a large undertaking, such as this, employing hundreds of men over a long period of time, to erect and op-

erate machine shops, blacksmith shops, lumber yards, and to engage in other occupations commonly carried on by independent industries. To permit such enterprises to escape the operation of the ordinance, while independent industries were taxed, would be an inequality not warranted by the single fact that the several correlated and incidental activities were united and included in the common purpose and project of carrying out the general task.

The occupations involving the building of the permanent railroad bridge, the laying of the sewers, and the building of the retaining wall, are occupations taxable under the appropriate sections of the ordinance quoted, and judgment will be rendered accordingly.

*Judgment accordingly.*

HAMILTON, J., concurs.

CUSHING, P. J., concurs in the conclusion.